UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:18-cv-105-FDW
(5:14-cr-83-FDW-DCK-1)

| | |
|---|---|
| JEFFREY DEAN TUCKER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), and on the Government's Motion to Dismiss, (Doc. No. 3).

I.  **BACKGROUND**

Late in the afternoon of October 9, 2014, pro se Petitioner Jeffery Dean Tucker drove Michelle Vaughn and Dawn Reese to a bar in downtown Hickory.[1] (Crim. Case No. 5:14cr83, Doc. No. 43 at ¶ 8: PSR). When the three left the bar, Petitioner began driving erratically. (Id.). When Petitioner stopped the car, Vaughn and Reese tried to run away. (Id.). Petitioner followed them, caught Vaughn, and lifted her into the air. (Id.). Two men intervened, confronting Petitioner and allowing Vaughn and Reese to escape. (Id.). Petitioner then began looking for Vaughn. (Id.).

That night, Petitioner went to the Twin Oaks Bar. (Id. at ¶ 9). A bouncer at the bar, Thomas Arthur, asked Petitioner to go outside because Petitioner was having a confrontation

---

[1] The Presentence Report describes Vaughn as Petitioner's "friend with benefits," and it describes Reese as a friend. (Id. at ¶¶ 6, 8).

1

with another customer.  (Id.).  Petitioner went outside, and Arthur told him to calm down.  (Id.).  Petitioner pulled out a silver .22 caliber revolver and threatened Arthur, but he left when he was told that police were being called.  (Id.; Doc. No. 56 at 217-23).

Petitioner was still looking for Vaughn and spoke with her by phone.  (Id., Doc. No. 43 at ¶ 10).  According to Vaughn, Petitioner said that he would kill all of Vaughn's friends, or anyone who came between the two of them.  (Id.; Doc. No. 56 at 186).  Petitioner also said that Vaughn's dogs could not save her and that he would kill them as well.  (Id., Doc. No. 43 at ¶ 10; Doc. No. 56 at 186).

Later that same night, Vaughn was hiding at her next-door neighbor's house.  (Id., Doc. No. 43 at ¶ 11).  The neighbor called 911 to report that Petitioner was coming to his house to shoot it and the neighbor's (Vaughn's) house up.  (Id., Doc. No. 56 at 103).  Deputies from the Catawba County Sheriff's Office responded to a report that Petitioner was going to shoot up the residence at Vaughn's address and shoot someone.  (Id. at ¶ 11: Doc. No. 57 at 20).  A second report stated that Petitioner had told some people that he was armed with two guns and was going to take care of Vaughn and the police.  (Id., Doc. No. 56 at 112).

When deputies arrived at the residence, Petitioner was not there.  As the deputies were about to leave, Petitioner drove up and nearly hit one of the patrol cars.  (Id. at 110).  Upon seeing the officers, he fled into the woods behind Vaughn's residence.  (Id., Doc. No. 43 at ¶ 11; Doc. No. 57 at 65-66).  Deputies found Petitioner lying face down in a briar patch.  (Id., Doc. No. 43 at ¶ 12; Doc. No. 56 at 114-15).  When he refused to comply with their commands, they tasered him.  (Id., Doc. No. 43 at ¶ 12).  After searching Petitioner, checking him for injuries, and securing him, officers searched the area where he had been lying down and found a loaded .22 caliber firearm on the ground.  (Id., Doc. No. 56 at 116-21, 122-24, 150; Doc. No. 57 at 66).

Officer Brian Arndt retrieved the gun. (Id., Doc. No. 56 at 122). Vaugh identified the firearm and showed officers the gun box into which it fit. (Id. at 128-29). Officer Arndt returned the gun to Vaughn because she was its lawful owner. (Id.).

Although Vaughn originally told investigators that Petitioner had taken the .22 caliber gun from her when he was released from prison a few months earlier and had not complied with her requests to return it, at trial she testified that she believed that the gun was under her bed the entire time. (Id., Doc. No. 43 at ¶ 7; Doc. No. 56 at 171-82). A grand jury indicted Petitioner, charging him with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (Id., Doc. No. 1). Petitioner proceeded to trial, and the jury convicted him. (Id., Doc. No. 37). Over Petitioner's objection, this Court determined that he was an armed career criminal and sentenced him to 188 months of imprisonment.[2] (Id., Doc. No. 42; Doc. No. 48 at 2: Judgment).

Petitioner timely appealed. In light of the Fourth Circuit's decision in United States v. Gardner, 823 F.3d 793 (4th Cir. 2016), the parties filed a joint motion for partial remand, requesting the Fourth Circuit to vacate Petitioner's sentence and remand for the limited purpose of resentencing Petitioner, while retaining jurisdiction over the appeal to consider any remaining contested issues. (Motion for Partial Remand, United States v. Tucker, No. 16-4134 (4th Cir. Aug. 26, 2016), Doc. No. 17). The Fourth Circuit granted the motion for partial remand, vacated Petitioner's sentence, and remanded the case for the limited purpose of resentencing Petitioner in light of Gardner. (Id., Doc. No. 19-1).

---

[2] Furthermore, the North Carolina Department of Public Safety website states that Petitioner, who is incarcerated at Piedmont Correctional Institution in Salisbury, North Carolina, is currently serving a sentence of 77-105 months after being convicted as a habitual felon in both Lincoln County, North Carolina, and Catawba County, North Carolina.

On remand, the Government requested an upward departure in light of Petitioner's extensive criminal history. (Id., Doc. No. 76 at 8-9: Resent. Tr.). This Court determined that the aggravating factors in the case supported an upward departure to criminal history category VI and a guideline range of 37 to 46 months of imprisonment. (Id. at 13). The Court also determined that an upward variance to the same level would also be appropriate. (Id.). The Court imposed a 46-month sentence, noting that Petitioner's "record of repeated recidivism, particularly with gun crimes and serious dangers to the public as a result of defendant's behavior, justify that kind of sentence." (Id. at 13-14).

Following resentencing, Petitioner moved to dismiss his appeal pursuant to Federal Rule of Appellate Procedure 42(b). (Mot. to Dismiss, No. 16-4134 (4th Cir. June 22, 2017), Doc. No. 36). In the motion, counsel noted that after discussing possible issues to be raised on appeal, Petitioner informed counsel that he wanted to withdraw his notice of appeal and have the Court dismiss his appeal. (Id.). The Fourth Circuit granted the motion and dismissed Petitioner's appeal. (Id., Doc. No. 38).

Almost a year later, Petitioner filed the present motion to vacate, claiming that his Fourth Amendment and due process rights were violated when he was arrested and property was searched incident to his arrest without a warrant, and he raises various challenges to the firearm that officers found. (Doc. No. 1 at 4-9, 11; Doc. No. 1-2 at 4-6, 8). Specifically, he contends that the chain of custody over the firearm was deficient; an officer's statement that he "believes" the firearm was the same one found on October 9th is insufficient; the photographic evidence showed only that the firearm was found in the officer's car; and there is no direct evidence tying the firearm to Petitioner. Petitioner also contends in a supporting memorandum that he was falsely imprisoned; that his arrest, search, and handcuffing constituted assault and battery; and

that the North Carolina and United States statutes for his crimes are deficient because they do not have "enacting clauses." (Doc. No. 2-1 at 7, 9-11). The Government filed its pending motion to dismiss on September 28, 2018, and Petitioner filed his response on October 17, 2018. (Doc. Nos. 3, 7). Thus, this matter is ripe for disposition.

## II.     STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.    DISCUSSION

A § 2255 motion is not a substitute for a direct appeal and is not an opportunity to re-try a criminal case. See United States v. Linder, 552 F.3d 391, 397 (4th Cir. 2009); Murawski v. United States, 179 F.2d 782, 783 (4th Cir. 1950) (holding "[q]uestions as to the sufficiency of the evidence . . . must be raised by timely appeal from the sentence"). Claims of errors that could have been raised on direct appeal, but were not, are procedurally barred unless the petitioner shows both cause for the default and actual prejudice or demonstrates that he is actually innocent of the offense. See Bousley v. United States, 523 U.S. 614, 621-22 (1998); United States v. Bowman, 267 F. App'x 296, 299 (4th Cir. 2008). "[C]ause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999).

5

To show actual prejudice, a petitioner must demonstrate that errors in the proceedings "worked to his actual and substantial disadvantage" and were of constitutional dimension. See United States v. Frady, 456 U.S. 152, 170 (1982). To show actual innocence, a petitioner must demonstrate that he "has been incarcerated for a crime he did not commit." United States v. Jones, 758 F.3d 579, 584 (4th Cir. 2014). Actual innocence is based on factual innocence and "is not satisfied by a showing that a petitioner is legally, but not factually, innocent." See Mikalajunas, 186 F.3d at 494.

Petitioner's claims are procedurally barred because he did not raise them on direct appeal and he voluntarily dismissed his appeal. Petitioner has not alleged cause or prejudice for his failure to raise these issues on appeal, nor has he shown that he is factually innocent of the underlying firearm offense, particularly given Arthur's testimony that Petitioner threatened him with a firearm. Therefore, his claims are procedurally barred and will be dismissed. See Bousley, 523 U.S. at 621-22.

Petitioner's Fourth Amendment, civil rights, and criminal claims also are not cognizable on collateral review. Before trial, Petitioner could have raised a Fourth Amendment challenge to his arrest and the search that yielded the firearm. Thus, he had a full and fair opportunity to litigate these claims. "Once a litigant is provided a full and fair opportunity to litigate a Fourth Amendment claim, he cannot re-litigate the claim in a motion pursuant to § 2255 unless there has been an intervening change in law." United States v. Schulte, 230 F.3d 1356, at *1 (4th Cir. 2000) (unpublished table decision). Here, Petitioner does not allege that there has been an intervening change in the law. Accordingly, his attempt to challenge his arrest and search is unavailing.

Even if the Court were to reach the merits of Petitioner's claim, it would fail. Petitioner had threatened to shoot Vaughn, her dogs, and anyone who came between Vaughn and Petitioner. He also fled when he saw the police and then refused to respond to their commands when they found him. This justified the officers' conduct in stopping, frisking, and detaining him. See Michigan v. DeFillippo, 443 U.S. 31, 37 (1979) (to establish probable cause for an arrest, the facts and circumstances must be "sufficient to warrant a prudent person" to believe "that the suspect has committed, is committing, or is about to commit an offense").

Additionally, the search that officers conducted was on Vaughn's premises—an area in which Petitioner had no reasonable expectation of privacy. See Rakas v. Ill., 439 U.S. 128, 134, 142 (1978) ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed" and does not have standing to challenge the search). Accordingly, Petitioner has not shown that the searches violated his Fourth Amendment rights.

Next, Petitioner's civil rights and criminal claims—including his claims of false arrest and imprisonment, and assault and battery—are not cognizable in a § 2255 proceeding. Section 2255 provides that:

> A prisoner in custody under sentence of a court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Petitioner's claims of false arrest and imprisonment are common law torts, not a basis for setting aside a conviction or sentence. See Fiore v. Benfield, No. 1:15cv271, 2015 WL 5511156, at *2 (M.D.N.C. Sept. 16, 2015) (recognizing "claims of false arrest and

imprisonment constitute common law torts"); Holmes v. Bryant, No. 1:14cv418, 2014 WL 2779996, at *2 (M.D.N.C. June 19, 2014) (same). Petitioner's assertion of assault and battery could be either a tort claim or a criminal charge, neither of which entitles him to relief in this proceeding. See N.C. GEN. STAT. ANN. § 14-33 (defining misdemeanor assaults and batteries); Dickens v. Puryear, 276 S.E.2d 325, 444-45 (N.C. 1981) (discussing tort of assault and battery). In sum, none of these claims set forth a basis on which to set aside Petitioner's conviction or sentence under § 2255. Accordingly, these claims are dismissed as non-cognizable.

Finally, Petitioner's statutory claim is also dismissed. Petitioner asserts that the North Carolina statutes and the United States Code show no enacting clauses for the crime charged against him. Petitioner's suggestion that the state and federal criminal laws are ineffective because they lack enacting clauses is wholly without merit.

**IV. CONCLUSION**

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 petition. To this extent, the Government's motion to dismiss is granted.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. The Government's Motion to Dismiss, (Doc. No. 3), is **GRANTED**.

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of

the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: October 22, 2018

Frank D. Whitney
Chief United States District Judge